SAMPSON & MURDOCK CO. v. SEAVER–RADFORD CO.

(Circuit Court, D. Massachusetts. February 2, 1905.)

No. 1,937.

1. COPYRIGHT—INFRINGEMENT—USE OF COPYRIGHTED DIRECTORY.

A compiler of a general directory has the right to use a prior copyrighted general directory both to verify the results of his own work, and to show him and direct him to the persons on whom it may be worth his while to call.

2. SAME.

One who is compiling a general directory of a city has the right, after making his own canvass, to take a part of the names and addresses contained in another copyrighted general directory, go to the original sources of information, ascertain how far the existing facts concur with the statements of the first directory, and then to print and publish the result as his own, abandoning what is not found, and changing what his investigation shows should be changed, and printing without change what he has, by means of his own investigation, found to be correct at the time such investigation was made; and such right is not lost by the fact that a person, in going to the sources of information, takes with him memoranda of names and addresses copied from the first directory, changing them when his investigation shows they should be changed to correspond with the facts, and checking them as correct when they prove to be correct.

3. SAME—INJUNCTION—SCOPE.

The master found on a reference in a suit to enjoin infringement of complainant's copyrighted directory, that defendant had copied into its directory certain specific matter from complainant's directory, including certain fictitious and erroneous names and statements, and had also transferred to all parts of its directory from complainant's directory many names, and information connected therewith, which it did not obtain by its original canvass or from original sources; but such infringing matter was not specifically set out in the finding, except sufficient thereof, taken at random from defendant's book, to support the finding, and to indicate its character and the means by which it could be identified. Held, that such findings entitled complainant to an injunction, but that, it not appearing that the objectionable matter could not be expunged, the court would not decree a general injunction against the sale of defendant's directory, but the same would be limited to restrain the sale only of any copy containing any of the infringing matter, including that indicated in such general finding.

4. SAME—RIGHT TO INJUNCTION—PROOF OF DAMAGES.

Proof of damages is not essential to entitle a complainant to an injunction restraining the infringement of a copyrighted publication.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 79.]

In Equity. Suit for infringement of copyright. On exceptions to master's report.

This cause has already been before the court in the matter of a preliminary injunction. 129 Fed. 761. We made an interlocutory decree for a temporary injunction unless the defendant before a certain time should file a bond to the complainant in the sum of $5,000, with sureties approved by the clerk, conditioned for the payment of any sum, except costs, which might be finally decreed against the defendant in this court or on appeal. The court further decreed that the defendant keep an account of sales of directories made by it. After the above decree the cause again came before this court

on May 17, 1904, and, under the practice in such cases, it was referred to John G. Stetson, as master, upon the bill, answer, and replication, to find the facts, and report to the court his findings of fact, his conclusions of law, and such portions of the evidence as either party might request or as he might deem useful to the court. The master has filed a complete report, which now forms the basis of action for the court. That report, omitting the introductory portion and schedules not material to be now considered, is as follows:

On May 17, 1904, this cause was referred to me, as master, upon the bill, answer, and replication, to hear the evidence, find the facts, and report to the court my findings of fact, my conclusions of law, and such portions of the evidence as either party may request. Mr. Alexander P. Browne represents the complainant, and Mr. Thomas Hunt represents the defendant, in the proceedings before me. I have heard the evidence offered by each party in the usual order. This evidence was taken stenographically by stenographers furnished by Mr. Browne, and copies of the evidence have been delivered to counsel for each party and to me. I have heard counsel for each party, and I now report my findings of fact and conclusions of law, and will report such portions of the evidence as either party may request.

### Findings of Fact.

Master's Finding 1. The following allegations of the complainant's bill of complaint are true, namely:

"(1) That on or before the 29th day of June, 1903, and prior to the date of the publication thereof in this or any foreign country, the firm of Sampson, Murdock & Co., of Boston, the predecessors in business of your orator, deposited in the mails within the United States, addressed to the librarian of Congress, at Washington, District of Columbia, a printed copy of the title of a certain book entitled 'The Boston Directory,' containing the city record, a directory of the citizens' business directory and street directory, with map No. 99, for the year commencing July 1, 1903, in order to copyright the same, and claimed said copyright as authors and proprietors, and that they deposited in like manner the sum of fifty cents for copyright fees, and that thereupon, on the 11th day of July, 1903, and also before the date of publication in this or any foreign country, deposited in the mails within the United States, addressed to the librarian of Congress, at Washington, District of Columbia, two printed copies of such copyright directory, and that said title so deposited was duly recorded by the librarian of Congress upon the said 29th day of June, 1903, whereby they became entitled to the copyright upon said book under the laws of the United States.

"(2) That on the 1st day of October, 1903, the said firm of Sampson, Murdock & Co., for a valuable consideration, and by an instrument in writing, a copy of which is hereto annexed [that is, annexed to complainant's bill], conveyed the said copyright to the complainant herein, and that the complainant by the said conveyance became, and has ever since been, and now is the sole owner of said copyright, and of the exclusive rights thereby conferred under the laws of the United States.

"(3) That the two copies of the said book deposited as above set forth were printed from type set within the limits of the United States, or from plates made therefrom.

"(4) That the said Sampson, Murdock & Co., and the complainant as their assignee and successor in the business, have given notice of said copyright by inserting in the several copies of every edition published, on the title page thereof, the copyright notice required by law, in the following words, to wit: 'Copyright 1903, by Sampson, Murdock & Co.'"

Master's Finding 2. The copyright in suit and the complainant's title to the same are good and valid.

Master's Finding 3. The defendant company, within the term of the complainant's copyright, and without the consent of the owners thereof, has printed, published, exposed for sale, and sold many copies of a book entitled

·"The 1904 City Directory of Boston," referred to in this report as defendant's directory; the complainant's copyrighted directory being referred to as ·complainant's directory.

Master's Finding 4. The defendant's directory differs from the complainant's directory in shape, size, style of type, and arrangement, containing three ·columns on each page, instead of two, and on these accounts is not liable to be mistaken for the complainant's directory. The complainant's directory is ·entitled "Boston Directory 1903," and the defendant's directory is entitled "1904 City Directory of Boston."

Master's Finding 5. In obtaining material for its directory, the defendant, ͵ by its agents and employés, made an original and substantial house to house ͵and office to office canvass of the city of Boston.

Master's Finding 6. After making its original canvass, the defendant, by its agents and employés, divided a copy of the complainant's directory into sections called 'checkbooks,' and front-checked; that is, checked in front of ' ·each name in black pencil upon the pages of these checkbooks the names which ·it had obtained by its original canvass, except that it did not check all the names of barbers, hairdressers, laborers, and persons having no business ·stated in complainant's copyrighted directory. Having thus front-checked names obtained by its original canvass, the defendant, by its agents and ·employés, blue-dotted in the checkbooks such names as its agents and employés desired to draw questions upon, and, having drawn such questions, sought to verify the information substantially copied from the checkbooks by going to original sources of information; but in many instances, particularly set forth in master's findings 7, 10, 11, and 12, the defendant, by its agents and employés, failing to make such verification, transferred to its directory the information contained in the complainant's copyrighted directory.

Master's Finding 7. The defendant transferred to its directory from complainant's copyrighted directory the twenty-nine (29) names, and the information connected therewith, shown in Master's Schedule A, annexed to this report. These names are all blue-dotted in the checkbooks into which complainant's copyrighted directory was divided, indicating that questions were drawn upon them, but an actual verification of such questions from original sources of information was impossible, as the persons represented by these names died at various times from March 3 to July 18, 1903, and were dead at the times when the attempted verifications, if any, were made.

Master's Finding 8. The defendant transferred to starred pages 50 and 51 ·of its directory, from pages 733 to 734 of complainant's copyrighted directory, ·the thirteen (13) names, and the information connected therewith, shown in · Master's Schedule B. None of these names were obtained on the original ·canvass, as none of them are front-checked, and questions were not drawn upon them, as none of them are blue-dotted. The persons represented by ·seven of those names moved from the residences or places of business given ·in both directories before the defendant commenced its original canvass.

Master's Finding 9. The defendant transferred to all parts of its general ·directory from the complainant's copyrighted directory many names, and information connected therewith, which it did not obtain by its original canvass, as such names are not front-checked in the checkbooks, and which it ·did not obtain by information from original sources on questions drawn upon such names, and information connected therewith, appearing in complainant's ·copyrighted directory, as such names are not blue-botted in the checkbooks. This finding is supported by a comparison of the names on many two con ·secutive pages selected at random from the checkbooks, so called, with the same names as they appear in the defendant's directory. Master's Schedule C illustrates this as to pages 81–82, 181–182, 281–282, 381–382, and 481–482. ·On these ten pages are shown fifteen such transfers.

Master's Finding 10. The defendant transferred to its directory from complainant's copyrighted directory the forty-six (46) names, and the information connected therewith, shown in Master's Schedule D, annexed to this report. These names are all blue-botted in the checkbooks into which complainant's directory was divided, indicating that questions were drawn upon them; but an actual verification of said questions from original sources of informa ·tion was impossible, as the persons represented by these names moved from

the places of business, or from the residences shown in both directories, at various times previously to July 12, 1903, some of them one or two years previously, and all but three—(28) Horstmeier, (38) Owen, and (42) Wallberg—previously to July 1, 1903, and all of them had so removed previously to the times when the attempted verifications, if any, were made.

Master's Finding 11. In many instances the defendant has inserted in its general directory the names of persons, and information connected therewith, in two forms. In one form it has copied the names, and information connected therewith, from the complainant's copyrighted directory; in the other form, the names and information connected therewith were obtained from some other source. Master's Schedule E contains thirty-six (36) such instances of double insertion of names and information connected therewith. As to each person included in this schedule, the first line shows the name and information (business address and residence) as they appear in complainant's copyrighted directory; the second line shows them as they appear in defendant's directory, copied from complainant's copyrighted directory; and the third line shows them as they appear the second time in defendant's directory; from information obtained from some other source. None of these names were front-checked in the checkbooks, and all of them were blue-dotted; indicating that the defendant did not obtain them, and the information connected therewith, by its original canvass, and that questions were drawn upon them for verification. The complainant introduced evidence tending to show that there were errors in these names, or in the information connected therewith, as the names and information appeared in its copyrighted directory, which errors the defendant copied into its directory, and that these names, and information connected therewith, are correctly given by the defendant in the second form in which they appear in its directory. That the defendant obtained such information, namely, that appearing in the second form in its directory, from original sources and upon special inquiry, corroborates complainant's evidence as above stated; and I find as a fact that in the thirty-six (36) instances enumerated in Master's Schedule E there were errors in the names or information, or both, as they appeared in the complainant's copyrighted directory, and that the defendant copied these errors into its directory.

Master's Finding 12. The complainant inserted in its list of public offices, halls, blocks, etc., in its copyrighted directory, on page 66, the fictitious name and location, "McKinley Hall, 24 W. Concord." This was a trap intentionally set to catch copyists, and the defendant fell into it; transferring to its list of office buildings, halls, blocks, theaters, and public buildings, on page 173 of its directory, this fictitious name and location, "McKinley Hall, 24 W. Concord St."

Master's Finding 13. The complainant inserted in its business directory, making a part of its copyrighted directory, on page 1969, under the title of "Boots and Shoes (Retail Dealers)," the fictitious name and location, "Rogers Robert L. 312 Maverick," and on page 2151, under the title of "Hairdressers," the fictitious name and location, "Jones G. W. 1650 Dorchester av." The defendant copied both these fictitious names and locations from complainant's copyrighted directory, and inserted them in its business directory, making a part of its 1904 City Directory of Boston, "Rogers Robert L. 312 Maverick, E. B.," on page 1774, under the title of "Shoe Dealers," and "Jones G. W. 1650, Dorchester av. Dor.," on page 1613, under the title of "Barbers."

Master's Finding 14. The defendant copied the following name and residence into its general directory, making a part of its 1904 City Directory of Boston, from complainant's copyrighted directory:

C. D. (58)   179.   Thomas Leo B. pastor Stoughton-st Baptist church,
                    Dor. h. 31, Stoughton, do.
D. D.        1**.   Thomas Leo B. pastor, Stoughton st Baptist church
                    Dor res. 31 Stoughton, do.
C. D. (3)    1994.  Thomas Leo B. (B), 31 Stoughton
D. D.        1633 (Business Directory, under the heading Clergymen).
                    Thomas Leo B. (B.) 31 Sumner, Dor.

The correct residence is 31 Sumner, Dorchester.

This name is blue-dotted in checkbook 58 from complainant's general directory, and is not front-checked in checkbook 3 from complainant's business directory; both indicating that the defendant did not obtain this name and residence by its original canvass and that questions were drawn upon this name for verification from original sources of information. The defendant did obtain the correct residence, 31 Sumner, Dorchester, and inserted it in its business directory under the title "Clergymen," as shown by the fourth line above, but copied into its general directory the incorrect address, "31 Stoughton, Dorchester," as shown by the first and second lines.

Master's Finding 15. The defendant copied the following names and information into its business directory, making a part of its 1904 City Directory of Boston, from complainant's copyrighted directory:

(1)

Business heading in both directories, "Architects."

C. D. (1) 1949.    Briscoe Maurice B. 120 Boylston
D. D.        1604.    Briscoe Maurice B. 120 Boylston
D. D.        1604.    Biscoe Maurice B. 110 Boylston.

This name is blue-dotted in checkbook 1, "Business," and the correct spelling of the name and the correct business location were obtained by defendant, as shown in the third line above and entered, but the defendant copied into its directory the incorrect spelling and the incorrect location from complainant's copyrighted directory, as shown in the first and second lines.

(2)

Business headings, "Boot & Shoe Dealers" in complainant's and "Shoemakers" in defendant's directory.

C. D. (2) 1966.    Masaree Arthur, 97 W. Concord
D. D.        1776.    Masaree Arthur, 97 W. Concord
"        993 (General Directory). Macaree Arthur, cobbler, 99 W. Concord, res. 43 Langdon, Rox.

This name is not front-checked in checkbook 2, "Business," indicating that it was not obtained on original canvass. The correct spelling of the name and the correct business location were obtained by defendant, as shown by the third line above, but the defendant copied into its directory the incorrect spelling and the incorrect location from complainant's copyrighted directory, as shown in the first and second lines.

(3)

Business heading in both directories, "Grocers."

C. D. (6) 2046.    Kovitzky Simon, 12 Morton
D. D.        1672.    Kovitzky Simon, 12 Morton
"        912s (General Directory). Koritzky Simon, crockery and coal agent, 12 Morton, res. do.

The defendant obtained the correct spelling of this name, and inserted it in its general directory, as appears by the third line above, but copied into its business directory the incorrect spelling, as shown by the first and second lines.

(4)

Business heading in both directories, "Leather Dealers."

C. D. (8) 2086.    Magoun Leather Co. 59 High
D. D.        1708.    Magoun Leather Co. 59 High

This company moved from 59 High street before defendant's original canvass. The name is blue-dotted in checkbook 33 from complainant's general directory, is not front-checked in checkbook 8 from complainant's business directory, and does not appear in defendant's general directory. This name and location were copied by the defendant into its business directory from complainant's copyrighted directory.

(5)

Business heading in both directories, "Real Estate Agents."

C. D. (11) 2151.    Jewell Albert L. 209 Wash. rm. 21
D. D.        1762.    Jewell A. L. 209 Wash. rm. 21
"        861 (General Directory). Jewell Albert L. real estate, 19 Congress, rm. 95, tel. res. at Brookline

The defendant obtained the correct business location of this man and inserted it in its general directory as appears by the third line above, but copied

into its business directory the incorrect location from complainant's copyrighted directory, as shown by the first and second lines.

(6)

Business heading in both directories, "Restaurants."

C. D. (11) 2110*.  Patten F. E. Mrs. 2280 Dorch av.
D. D.      1766.  Patten F. E. Mrs. 2280 Dorchester av. Dor.
  "        1285 (General Directory). Patten F. E. lunch room, 2270 Dorchester av. Dor. res. 2260 do.

This name is not front-checked in checkbook 11, "Business." It is blue-dotted in checkbook 44, where the correct location is given. The defendant obtained the correct location, and inserted it in its general directory, as appears by the third line above, but copied the incorrect location into its business directory from complainant's copyrighted directory, as shown by the first and second lines.

(7)

Business heading in both directories, "Teachers, Elocution."

C. D. (12) 2139.  Warren Edward, 176 Tremont
D. D.      1795.  Warren Edward, 176 Tremont

This man moved from 176 Tremont before defendant's original canvass. The name is blue-dotted in checkbook 60 from complainant's general directory, is not front-checked in checkbook 12 from complainant's business directory, and does not appear in defendant's general directory. The defendant copied this name and location into its business directory from complainant's copyrighted directory.

(8)

Business heading in both directories, "Teachers, Music." .

C. D. (12) 1240*.  Byrnes Alva, 162 Boylston
D. D.      1796.  Byrnes Alva, 162 Boylston
  "        393 (General Directory). Byrnes Alma, music teacher, res. Union ter. J. P.

This name is front-checked in checkbook 6 from complainant's general directory, and appears in complainant's and in defendant's general directory with the correct spelling, "Alma." It is also front-checked in checkbook 12, taken from complainant's business directory, where it appears with the incorrect spelling, "Alva." The defendant obtained the correct spelling, "Alma," either from an original source or from complainant's general directory, and inserted it in its general directory, as shown by the third line above, but copied the incorrect spelling, "Alva," into its business directory, from complainant's copyrighted directory, as shown by the first and second lines.

Master's Finding 16. Many instances of similarity in the forms of entry of special names and information in the two directories are indications of a general system of copying by the defendant into its directory from complainant's copyrighted directory, of which instances the following are illustrations:

(1)

C. D. (3)  170.  Belknap George E. chairman Nautical Training School Commission, 110 State House, h. at Brookline
D. D.      292.  Belknap George, chairman, Nautical Training School Commission, 110 State House, res. at Brookline

(2)

C. D. (4)  228.  Bradlee Benjamin H. deputy clerk, U. S. circuit court, 112 P. O. bldg. h. at Newton Centre
D. D.      339.  Bradlee Benjamin H. dep. clerk, U. S. circuit court, 112 P. O. bldg. res. at Newton Centre

(3)

C. D. (4)  228.  Bradlee Roger W. clerk, 40 Water, rm. 15, bds. Blue Hill av. cor. Austin, Mat.
D. D.      339.  Bradlee Roger W. clerk, 40 Water, rm. 15, res. Blue Hill av. cor. Austin, Mat.

(4)

C. D. (45) 1442.  Pennock A. N. clockmaker, 147 Tremont, h. 250 Mass. av.
D. D.      1295.  Pennock A. N. clockmaker, 147 Tremont, res. 250 Mass. av.

(5)

C. D. (45) 1442.   Pennock F. G. foreman, 394 Atlantic av.
D. D.      1295.   Pennock F. G. foreman, 394 Atlantic av.

(6)

C. D. (45) 1442.   Pennock Artemas S. pres. 442 Tremont bldg. h. at S. Braintree
D. D.      1295.   Pennock Artemas S. pres. 442 Tremont bldg. res. at S. Braintree

(7)

C. D. (59) 1798.   Trowbridge Alexander H. clerk, U. S. circuit court, 112 P. O. bldg. h. at Brookline
D. D.      27**.   Trowbridge Alexander H. clerk, U. S. Circuit Court, 112 P. O. bldg. res. at Bro.

(8)

C. D. (59) 1798.   Trowbridge Herbert W. clerk, Custom House and accountant, 82 Devonshire, rm. 28, h. at Stoughton
D. D.      27**.   Trowbridge Herbert W. clerk, Custom House, and accountant, 82 Devonshire, rm. 28, res. at Stoughton

### Conclusions of Law.

First. The complainant is entitled to an injunction against the defendant from using or selling or offering for sale any copy of its 1904 City Directory of Boston so long as it contains—

(1) In its list of office buildings, halls, etc., on page 173, the name and location, "McKinley Hall, 24 W. Concord St.";

(2) In its general directory the names and information connected therewith set out in master's findings 7, 8, 9, 10, 11, and 14;

(3) In its general directory the names and the information referred to in master's finding 9 as not front-checked in the checkbooks, and so not obtained by original canvass, and not blue-dotted, and so not obtained from original sources, upon questions drawn, but which are not included in Master's Schedule C; and

(4) In its business directory the fictitious names and locations, "Rogers Robert L. 312 Maverick," on page 1969, and "Jones G. W. 1650 Dorchester av.," on page 2151, and the sixteen (16) names and information in the form described in master's findings 15 and 15a.

Second. The complainant is entitled to a decree for an accounting for profits derived by the defendant from, and by reason of, its incorporating in its 1904 City Directory of Boston the names and information specified in the above first conclusion of law, in paragraphs 1, 2, 3, and 4, and from the manufacture and sale of said directory, in so far as such profits are attributable to such incorporating therein of said names and information.

Respectfully submitted,          John G. Stetson, Master.

[Memorandum. Schedules A, B, C, D, and E, attached to the master's report on file in the clerk's office, are omitted here.]

August 26, 1904. The foregoing, except as corrected in accordance with Master's Notes 35, 38, 41, and 44, was submitted to counsel for both parties (Mr. Browne and Mr. Hunt) as a first draft report to be retained in the master's office till Thursday, September 15, 1904. Counsel for both parties filed objections to said first draft report, entitled as follows: "Respondent's Objections to Master's Report," filed August 30, 1904; "Respondent's Further Objections to Master's Report," filed September 2, 1904; and "Complainant's Action on Master's Draft Report," filed September 15, 1904. I have inserted in these papers master's notes 1 to 48, inclusive, showing my action thereon, and explaining such action in some particulars. Except so far as these notes modify my report, I overrule the objections of both parties. These objections, with master's notes inserted, are as follows:—

### Respondent's Objections to Master's Report.

[Filed with the Master August 30, 1904.]

(1) The respondent objects to so much of master's finding 6 as finds that agents and employés of respondent failed to make the verification therein referred to.

(2) The respondent objects to master's finding 7 in so far as it finds that an actual verification from original sources of information was impossible or was not made.

(3) The respondent objects to so much of master's finding 8 as finds that seven (7) of the persons therein mentioned had moved before the respondent commenced its canvass.

(4) The respondent objects to master's finding 9.

(5) The respondent objects to master's finding 10, and particularly to the part thereof which finds that an actual verification was impossible, and to that part which finds that the persons whose names are therein mentioned had moved prior to July 12, 1903, or July 1, 1903, or the time when attempted verifications were made.

(6) The respondent objects to master's finding 11 that the names of persons and information connected therewith are inserted in two forms.

(7) The respondent objects to so much of master's finding 14 as finds that the correct residence of the person there mentioned is 31 Sumner street, Dorchester.

(8) The respondent objects to so much of master's finding 15 (1) as finds that the two names there mentioned are intended for the same person.

(9) The respondent objects to so much of master's finding 15 (2) as finds that the two names therein mentioned are intended to refer to the same person.

(10) The respondent objects to so much of the master's finding 15 (4) as finds the time of removal.

(11) The respondent objects to so much of master's finding 15 (5) as finds that the three entries there quoted are intended to refer to the same person.

(12) The respondent objects to so much of master's finding 15 (7) as finds that the person therein mentioned had moved before the respondent's canvass.

(13) The respondent objects to so much of master's finding 15 (8) as finds that the two names there mentioned intended to refer to the same person.

(14) The respondent objects to master's finding 16.

(15) The respondent objects to the master's first conclusion of law.

(16) The respondent objects to the master's second conclusion of law.

(17) The respondent objects to the ruling of the master admitting in evidence hearsay statements as to what was or was not correct information.

(18) The respondent objects to the rulings of the master admitting in evidence hearsay statements as to dates of removal.

(19) The respondent objects to the rulings of the master admitting in evidence hearsay statements as to the fact of removal.

(20) The respondent objects to the rulings of the master declining to strike out hearsay statements as to what was or was not correct information as to the date of removal, and as to the fact of removal after they had been admitted.

(21) The respondent objects to the refusal of the master to make the findings requested by it, hereto attached.

(22) The respondent objects to the failure of the master to make the rulings of law requested by it, and hereto attached.

(23) The respondent makes again and insists upon the objections taken by him in the course of the trial as shown by the record.

[Master's Note 1. Upon consideration of the above twenty-three (23) objections, I make no changes in my draft report; but I consider the findings requested in paragraph 21, and the rulings of law requested in paragraph 22, and make notes therein showing, and to some extent explaining, my action thereon.]

By its Solicitors,                          Gaston, Snow & Saltonstall.

Respondent's Request for Findings.

[Attached to Respondent's Objections to Master's Report.]

The respondent requests the following findings of facts:

*     *     *     *     *     *     *     *     *     *     *     *

Fourth. There has been no copying of the complainant's book by the respondent, except in so far as the method of drawing questions from the com-

plainant's book adopted by the respondent may amount, as a matter of law, to copying.

[Master's Note 2. I am unable to make this finding in view of the facts shown in master's findings 7, 8, 9, 10, 11, 12, 13, 14, 15, 15a and 16.]

Fifth. The respondent believed in good faith that it had the right to make such use of the complainant's book as it has made, and had been so advised by counsel.

[Master's Note 3. The defendant is a corporation, and as such could act only through its officers, agents, and employés, and could have no belief. It must be judged by the acts of its officers, agents, and employés in its behalf. Some of its agents believed that it could lawfully use complainant's copyrighted directory to front-check such names as it had obtained information upon by its original canvass; to blue-dot such names not front-checked as it desired information upon; to draw questions on such names, which consisted in copying such names, and the information connected therewith, from complainant's copyrighted book on question slips; to ascertain from complainant's copyrighted book original sources of information; and to go to such original sources of information and verify, or correct if incorrect, the information contained on the question slips; and that it could lawfully incorporate in its directory the information so verified or corrected. If the defendant had made such use only of complainant's copyrighted directory, and had incorporated in its directory only such information as it so verified or corrected, I could not have made master's findings 7 to 16, inclusive, and 15a. In some way, however, and it is not important to determine in what way, the defendant did the copying set forth in those findings.]

Sixth. The respondent has actually expended in compiling, printing, and binding its directory about forty thousand (40,000) dollars.

[Master's Note 4. I find as above requested.]

Seventh. The issue of an injunction such as is asked for would mean the total destruction of the respondent's investment in its directory.

[Master's Note 5. I cannot say as to this. Such an injunction as I find the complainant is entitled to by my first conclusion of law, on page 12, would prevent the further use or sale of defendant's 1904 City Directory of Boston so long as it contained the matters specified in said first conclusion of law.]

Eighth. There were at the time of the publication of the respondent's book, and are now, only 180 copies of the complainant's copyrighted book remaining for sale, and there is no sale for these. (Mr. Murdock's evidence, pages 398, 399).

[Master's Note 6. I find as requested.]

Ninth. The respondent made a bona fide canvass of the city of Boston in the course of compiling its book, employing for that purpose large numbers of men, and this canvass extended over a period of between four and six months.

[Master's Note 7. I find as requested. See master's finding 5, page 4.]

Tenth. The general directory of the respondent's book contains some 50,000 more names than the general directory of the complainant's book.

[Master's Note 8. Roughly speaking, yes.]

Eleventh. The street directory of the respondent's book contains several hundred more names than the street directory of the complainant's book, and also much additional information with reference to the streets. The complainant makes no claim of infringement in the street directory.

[Master's Note 9. Roughly speaking, yes.]

Twelfth. The respondent's general directory states whenever a person mentioned in it has a telephone, which is information not given by the complainant's directory.

[Master's Note 10. Roughly speaking, yes.]

Thirteenth. The business directory of the respondent's book is to a large extent arranged under different headings from that of the complainant's book.

[Master's Note 11. Roughly speaking, yes.]

Fourteenth. The number of names in the complainant's book, from which questions were drawn by the respondent, is about twelve per cent. of the entire number of names therein contained (Mr. Hyde's evidence, page 350—questions drawn on seventy-five per cent. of the blue-dotted names).

[Master's Note 12. Perhaps so. I have not made a close estimate of the percentage, and it is not material that I should do so.]

Fifteenth. Ninety per cent. of the errors contained in the complainant's book in connection with names from which questions were drawn have been corrected by the respondent.

[Master's Note 13. I cannot say, as to this.]

Sixteenth. I find that, in those cases in which the respondent went to the complainant's book for information to direct it to original sources of information, it actually made an independent investigation of the original sources of information in substantially all cases [Master's Note 14. I cannot find this, considering the whole evidence before me. See master's findings 7, 10, and 14], and that in the remaining cases, if any, where no such investigation was made, this occurred by reason of the carelessness or fault of the individual canvassers [Master's Note 15. The individual canvassers were the employés of the defendant, and if, through their carelessness or fault, it transpired that the defendant inserted in its directory names and information copied from complainant's copyrighted directory, the defendant is responsible for such copying], and in disobedience to the instructions given by the respondent to its canvassers [Master's Note 16. Some of the defendant's agents and employés gave instructions to defendant's canvassers, and it, from disobedience of the instructions so given, it transpired that the defendant inserted in its directory names and information copied from complainant's copyrighted directory, the defendant is responsible for such copying.]

Seventeenth. I find that the respondent constantly and emphatically prohibited all of its employés from making any use of the complainant's book except for the purpose of drawing questions from it.

[Master's Note 17. Some of the defendant's agents frequently and emphatically prohibited others of defendant's employés from making any use of complainant's copyrighted directory except for the purpose of drawing questions from it.]

Eighteenth. The respondent has produced at the hearing the copy of the complainant's directory, which indicates the exact number of names checked and blue-dotted. It has produced large quantities of the original copy of its own book, and offered to produce the whole of such copy, which was not actually produced only becauses of its great bulk. It has also produced the original circulars, and some of the original schedules used by it in obtaining original information.

[Master's Note 18. I find as above requested.]

Nineteenth. The respondent put upon the stand as witnesses eight or nine of the men employed by it as canvassers, and six of the women employed by it in office work, two of whom had acted as superintendents. It offered to produce any other canvassers and any other women employed by it whom counsel for the complainant might call for, and a stipulation signed by both counsel has been filed, that the number of canvassers and that the number of women employed is so great as to make it impracticable and inconvenient to call them all as witnesses, and that no inference should be drawn against the respondent by reason of its failure to call as witnesses any others.

[Master's Note 19. I find as above requested.]

Twentieth. The complainant's copyrighted book contains ten fictitious names, of which four are in the general directory. (Mr. Murdock, page 49.) There is no evidence that seven of these ten appear in the respondent's book at all.

[Master's Note 20. I find as requested.]

Twenty-First. There is no evidence that any fictitious name appears in the respondent's general directory or in its street directory.

[Master's Note 21. I find as requested.]

Twenty-Second. The three alleged fictitious names which appear in the respondent's business directory and list of halls appear there because questions were drawn on them from the complainant's book which were not correctly investigated.

[Master's Note 22. Three alleged fictitious names appear in respondent's business directory and list of halls, and these names and information connected therewith were not and could not be verified. See master's findings 12 and 13.]

Twenty-Third. I find that the complainant can suffer no legal damage hereafter from the further sale of the respondent's book.

[Master's Note 23. I cannot find as above requested. It is my opinion that the fact is otherwise. Such damages, however, if any, may be recovered in a civil action brought under Rev. St. § 4964, as amended March 3, 1891, c. 565, § 7, 26 Stat. 1109, U. S. Comp. St. 1901, p. 3413. They cannot be recovered in the present case by bill in equity for an injunction, under which profits accruing to the infringer may be recovered, but not damages in addition thereto, as upon a bill in equity for an injunction for infringement of letters patent.]

Twenty-Fourth. The new directory of the complainant's for the year 1904 was published by them early in the month of July, 1904, prior to the conclusion of the hearings before me in this case.

[Master's Note 24. I find as requested.]

### Respondent's Requests for Rulings.

#### [Attached to Respondent's Objections to Master's Report.]

In the above-entitled cause the respondent requests the master to rule as follows:

(1) A compiler of a general directory has the right to use a prior general directory both to verify the results of his own work, and to show him and direct him to the persons upon whom it may be worth his while to call. Sampson & Murdock Co. v. Seaver-Radford Co. (C. C.) 129 Fed. 761; Dun v. International Mercantile Agency (C. C.) 127 Fed. 173; Colliery Engineering. Co. v. Ewald (C. C.) 126 Fed. 843; Edw. Thompson Co. v. American Lawbook Co., 122 Fed. 922, 62 L. R. A. 607, 59 C. C. A. 148; Moffatt v. Gill, 86 Law Times Rep. 405.

[Master's Note 25. I rule as above requested.]

(2) One who is compiling a general directory of a city has the right, after making his own canvass, to take a part of the names and addresses contained in another general directory, go to the original sources of information, ascertain how far the existing facts concur with the statements of the first directory, and then to print and publish the result as his own; abandoning. what is not found, and changing what his investigation shows should be changed, and printing without change what he has by means of his own investigation found to be correct. Sampson & Murdock Co. v. Seaver-Radford Co. (C. C.) 129 Fed. 761; Dun v. International Mercantile Agency (C. C.) 127 Fed. 173; Colliery Engineering Co. v. Ewald (C. C.) 126 Fed. 843; Edw. Thompson Co. v. American Lawbook Co., 122 Fed. 922, 62 L. R. A. 607, 59 C. C. A. 148; Moffatt v. Gill, 86 Law Times Rep. 404.

[Master's Note 26. I rule as requested; but the compiler must go to the original sources of information, must ascertain how far the existing facts concur with the statements of the first directory, and must print only what by means of his own investigation he has found to be correct.]

(3) The right to do as above stated is not lost by reason of the fact that a person, in going to the sources of information, takes with him memoranda of names and addresses copied from the first directory, changing them when his investigation shows they should be changed to correspond with the facts, and checking them as correct when they prove to be correct.

[Master's Note 27. I rule as above requested.]

(4) The utmost legal damage which the plaintiff in this case can sustain by reason of the publication of an infringing book cannot, in view of the fact that there can be no further edition of its copyrighted book, exceed the entire value of all copies remaining in its hands for sale.

[Master's Note 28. No damages can be recovered in this case, which is upon a bill in equity for an injunction for an infringement of a copyright, under which profits accruing to the infringer may be recovered, but not damages in addition thereto, as upon a bill in equity for an infringement of letters patent. See master's note 23.]

(5) There is no evidence to warrant a finding of error or of the date of removal in any case where the only evidence comes from witnesses who admit that they have no knowledge upon the subject except such as is derived from hearsay.

[Master's Note 29. I rule as above requested.]

Respondent's Further Objections to Master's Report.

[Filed with the Master September 2, 1904.]

And now comes the respondent in the above-entitled cause, and prior to September 15th, the date set by the master, files with the master the following further objections to his report:

First. That the master has failed to make any finding as to the amount of damage suffered by the complainant through the alleged infringement.

[Master's Note 30. No question of damages is involved in the present reference. This is a reference preliminary to an interlocutory decree which will be final so far as it concerns an injunction. An order for an accounting for profits is usually incorporated in such a decree. If the defendant has infringed, as found by me in master's findings 7, 8, 9, 10, 11, 12, 13, 14, 15, and 15a, in which are specified 159 cases of copying by the defendant from complainant's copyrighted directory namely:

| | | | | | |
|---|---|---|---|---|---|
| In Finding | 7, | Schedule | A, | 29 | cases, |
| " | " | 8, | " | B, | 13 | " |
| " | " | 9, | " | C, | 15 | " |
| " | " | 10, | " | D, | 46 | " |
| " | " | 11, | " | E, | 36 | " |
| " | " | 12, | | | 1 | case, |
| " | " | 13, | · | | 2 | cases, |
| " | " | 14, | | | 1 | case, |
| " | " | 15, | | | 8 | cases, |
| " | " | 15A, | | | 8 | " |

—and has also infringed by copying, as found by me in master's finding 9, in a large number of cases not specifically specified, it logically follows that the defendant should be enjoined as stated by me in my first conclusion of law, on page 12 of this report. The profits to be recovered may be determined on a reference to be made a part of or to follow the decree for injunction. It is not my duty to determine these profits on this reference. The damages, if any, resulting from the infringement, may be determined in a civil action under Rev. St. § 4964, as amended March 3, 1891. See master's notes 23 and 28.]

Second. That the master has failed to make any finding as to whether any damage alleged to be suffered by the complainant is either serious or irreparable.

[Master's Note 31. See master's note 30.]

Third. That the master has failed to make any finding as to whether the injury done to the respondent by an injunction would be disproportionate to the benefit derived by the complainant.

[Master's Note 32. See master's note 30.]

Fourth. That the master has failed to make any finding as to the number of copies of the complainant's copyrighted book which remained in existence or could be sold at the time of the alleged infringement or at the time of the hearing.

[Master's Note 33. Such finding would not be pertinent to any question involved in this reference. See master's notes 23, 28, and 30.]

Fifth. That the master has failed to make any finding as to the good faith of the respondent corporation or its officers.

[Master's Note 34. The defendant corporation must be judged by what it has done through its officers, agents, and employés, which, so far as the alleged infringement is concerned, is shown by master's findings 7, 8, 9, 10, 11, 12, 13, 14, 15, and 15a. I have not intended, and do not now intend in this report, to pass upon the good faith of any one. It is not necessary to do so upon this reference.]

By its Solicitors,                    Gaston, Snow & Saltonstall.

Complainant's Action on Master's Draft Report.

[Filed with the Master September 15, 1904.]

First. It is submitted that on page 1, in third line of the paragraph beginning "Front Checks," the word "their" should be changed to "its."

[Master's Note 35. I adopt Mr. Browne's suggestion, and have changed my report accordingly.]

Second. That on page 2, about the middle of the page, the words "mutually agreed upon" should be substituted for the words "furnished by Mr. Browne."

[Master's Note 36. The record reads: "It is agreed that the evidence in this case may be taken stenographically." I understand that the stenographers were furnished by Mr. Browne, but as to this I may be in error. There may have been an agreement of which I was not advised.]

Third. It is submitted that on page 4, in the paragraph headed "Master's Finding 7," the words "it is impossible that" should be inserted before the words "an actual verification" in the seventh line of said paragraph, and that the word "made" should be substituted for the word "impossible," in the eighth line thereof.

[Master's Note 37. My statement as it stands means substantially the same as it would if amended as suggested by Mr. Browne.]

On page 5, line 6, the word "eleven" should be substituted for the words "the first seven."

[Master's Note 38. On re-examination of my draft report, I discover that seven (but not the first seven) of the persons represented by the names on Master's Schedule B moved from the residences or places of business given in both directories before the defendant commenced its original canvass, namely: (1) Charles B. Gilman; (2) Caribel Gilman; (4) Grace M. Gilman; (8) Ada Wells Gilman; (11) Edgar F. Gilpatric; (12) Samuel S. Gilpatrick; and (13) Mrs. T. B. Gilpatrick. I accordingly amend master's finding 8, page 5, line 6, by striking out the words "the first," and I confirm said finding as so amended. My error arose from rearranging the names alphabetically after I had drafted the finding.]

Fourth. At the end of the paragraph headed "Master's Finding 9" the following should be inserted: "In the complainant's general directory, containing 1,725 pages, there would be found 2,587 such transfers in all, if the same proportion holds throughout."

[Master's Note 39. What Mr. Browne suggests should be inserted at the end of master's finding 9 as an obvious inference from the last paragraph of that finding. It is not necessary for me to amend this finding.]

Fifth. In the paragraph beginning "Master's Finding 10," in the seventh line thereof, after "but," insert "it is impossible that." In the eighth line of said paragraph substitute "made" for "impossible."

[Master's Note 40. My statement as it stands means substantially the same as it would if amended as suggested by Mr. Browne.]

Sixth. It is submitted that in master's finding 11 there should be added to the thirty-five instances of double insertion contained in Schedule E the following instances, and that the other findings under this head should be corrected numerically accordingly:

(1) "Allen, Robert C," should be "Allan," page 18.
(2) "Anderson, Charles A," should be "William C.," page 59.
(3) "Benthall, Fred J.," should be "Bentholl," page 23.
(4) "Coburn, William M., 133 Harvard av.," should be "William B., 13 Harvard av.," page 43.
(5) "Demers, Joseph," should be "James," page 43.
(6) "Eastman, Charles," should be "Charles E.," page 19.
(7) "Hale, George A.," should be "George E.," page 19.
(8) "Hirschman, Harry," should be "Hirshman," page 20.
(9) "Lightford, Harry L.," should be "Lightfoot, Harry W.," page 20.
(10) "McGibbon, John J.," should be "John D.," page 64.
(11) "Rigby, James J., 54 Dorchester," should be "54 Newport," page 45.
(12) "Ross, William R.," should be "Jordan, William Roscoe," page 21.
(13) "Saunders, Edward L., 8 Joy," should be "Edmund S., 10 Joy," page 21.
(14) "Sheerin, Thomas, Rev.," should be "John, Rev.," page 45.
(15) "Stevenson, Francis, 564 Washington," should be "Frederick," page 45.

[Master's Note 41. In making Master's Schedule E, I examined each of the instances specified by Mr. Browne, except No. 8, and decided not to include them in that schedule. I have re-examined these instances, and am satisfied that my decision was correct.

No. 8 might have been included in Master's Schedule E, as follows:

(36)

C. D. (23)  883.  Hirschman Harry, trimmer, 18 Summer, bds. 124 Union park

D. D.   800.  Hirschman Harry, trimmer, 18 Summer, res. 124 Union pk.

"   800.  Hirshman Harry, clothing trimmer, 18 Summer, res. 124 Union pk. st.

I now add this instance to Master's Schedule E, and amend master's finding 11 by substituting "thirty-six (36)" for "thirty-five (35)" in two places on page 6.]

Seventh. In the paragraph headed "Master's Finding 13," in the seventh line thereof, after the word "av.," insert the following sentence: "These were also traps intentionally set, and the defendant fell into them also."

[Master's Note 42. This sentence is easily read into master's finding 13 as it stands. It is not necessary to amend the finding.]

Eighth. On page 8, before "Master's Finding 15," insert a new paragraph as follows:

"Master's Finding 14a. The defendant transferred to all parts of its business directory from the complainant's copyrighted directory many names, and information connected therewith, which it did not obtain by its original canvass. As it is admitted, 'the defendant's business directory was checked up from original information in the same way as the general' (Hyde, page 265), but there was no blue-dotting. It has appeared that the number of names so transferred in checkbooks 2 and 3, taken as samples of the whole, was about forty per cent. of all the names appearing in the defendant's business directory."

[Master's Note 43. I decline to incorporate the above into my report as master's finding 14a. The defendant introduced evidence tending to prove that it made a use of complainant's business directory similar to that which it claimed to have made of complainant's general directory; that is to say, that it front-checked the names as to which it obtained information by its original canvass, and drew questions upon slips of paper on such names in small type as it did not front-check, and, using these question slips, went to original sources of information, verified the information contained on the question slips, or corrected it where it should be corrected, and transferred to its directory the information so verified or corrected. This evidence is uncontradicted except as to two (2) specific instances specified in master's finding 13, eight (8) specific instances specified in master's finding 15, and eight (8) specific instances specified in master's finding 15a, made upon consideration of Mr. Browne's suggestion which immediately follows this note.]

Ninth. On page 10, before the paragraph beginning "Master's Finding 16," insert, "Other cases of errors copied in the business directory are as follows:

(1) D. D., page 1612, Barbers, Alario, Joseph, testimony, page 75.

(2) D. D., page 1760, Real Estate, Beals & Newhall, testimony, page 75.

(3) D. D., page 1649, Dress-makers, Burham, S. E., testimony, page 75.

(4) D. D., page 1776, Shoe-makers, Dugas, John, page 74.

(5) D. D., page 1778, Shoe Manufacturers, Farrior, Brown Shoe Company, page 76.

(6) D. D., page 1610, Bakers, Langerfeld, John P., page 78.

(7) D. D., page 1799, Teachers of Music, Moore, Grace T., page 78.

(8) D. D., page 1623, Butter and Cheese, Mugford, B. E., page 74.

(9) D. D., page 1777, Shoe-makers, Petro, Frederick, page 74.

(10) D. D., page 1777, Shoe-makers, Riley, Patrick J., page 74.

(11) D. D., page 1760, Real Estate Brokers, Adams Real Estate Trust Company, page 18.

(12) D. D., page 1700, Lawyers, Chisholm, George C., page 19.

(13) D. D., page 1649, Dress-makers, Churchill, Mrs. M. H., page 19.

(14) D. D., page 1606, Artists, Enneking, John J., page 19.

(15) D. D., page 1721, Milliners, Gibbs, Carrie E., page 19.

(16) D. D., page 1787, Stock Brokers, Gile, Daniel D., page 43.

(17) D. D., page 1702, Lawyers, Hay, Robert T., page 19.

(18) D. D., page 1625, Carpenters, Henderson, W. T., page 43.

(19) D. D., page 1671, Grocers, Johnson, Adolph O., page 47.

(20) D. D., page 1672, Grocers, Laro V., page 20.
(21) D. D., page 1650, Dress-makers, Leach, Lile, page 44.
(22) D. D., page 1704, Lawyers, Morrell, George C., page 44.
(23) D. D., page 1797, Teachers of Music, Shedd, Heman, page 45.
(24) D. D., page 1601, Accountants, Watson, George, page 21.
(25) D. D., page 1610, Bakers, Westcott, Jennie, page 68.

In all the instances last above mentioned, the defendant's General Directory either fails to show the name at all, or shows it with different information. In every case the information furnished in the defendant's Business Directory is an error copied from the complainant's Business.

[Master's Note 44. I have now examined the above instances, which were not called to my attention specifically in complainant's brief, nor at the argument before me, and in view thereof make the following finding:

Master's Finding 15a. Other cases of errors copied into the defendant's business directory, making a part of its 1904 City Directory of Boston, from complainant's copyrighted directory, are as follows:

(9) Mr. Browne's (10)

Business heading, "Boot and Shoe Makers" in complainant's and "Shoemakers" in defendant's directory.

C. D. (2) 1967. Riley Patrick J. 145 Albany
D. D.    1777. Riley Patrick J. 145 Albany
"       1386. Riley Patrick J. Boots and shoes, 7 Oak, res 93 do.

(10) Mr. Browne's (12)

Business heading in both directories, "Lawyers."

C. D. (8) 2078. Chisholm George C. 15 Court sq. rm. 2
D. D.    1700. Chisholm George C. 15 Court sq. r. 2
"       443. Chisholm George C. real estate, 15 Court Sq. rm. 2 res. at Sharon.

(11) Mr. Browne's (15)

Business heading in both directories, "Milliners."

C. D. (9) 2103. Gibbs Carrie E. 110 Hotel Pelham
D. D.    1721. Gibbs Carrie E. 110 Hotel Pelham
"       43*. Gibbs Carrie A. Mrs. millinery, 110 Hotel Pelham, res do.

(12) Mr. Browne's (17)

Business heading in both directories, "Lawyers."

C. D. (8) 2080. Hay Robert T. 53 State, rm. 712
D. D.    1702. Hay Robert T. 53 State, rm. 712
"       766. Hay Robert T. (Carret, Chase & Hay) lawyer, 53 State, rm. 713, res. 2 Quincy pl. Rox.

(13) Mr. Browne's (18)

Business heading in both directories, "Carpenters and Builders."

C. D. (3) 1983. Henderson W. T. 35 Crescent ave. Dor.
D. D.    1625. Henderson W. T. 35 Crescent ave. Dor.
"       780. Henderson William T. carpenter, res. 53 Crescent ave. Dor.

(14) Mr. Browne's (19)

Business heading in both directories, "Grocers."

C. D. (6) 2046. Johnson Adolph O. 498 Sumner E. B.
D. D.    1671. Johnson Adolph O. 498 Sumner E. B.
"       862. Johnson Adolph O. dry goods 322 Sumner, E. B. and grocer, 487 do. res. 498 do.

(15) Mr. Browne's (20)

Business heading in both directories, "Grocers."

C. D. (6) 2046. Laro V. 469 Hanover
D. D.    1672. Laro V. 469 Hanover
"       928. Lauro Vincenzo, grocer, 469 Hanover, res. do.

(16) Mr. Browne's (25)

Business heading in both directories, "Bakers."

C. D. (1) 1956. Westcott Jennie 85 Orleans
D. D.    1610. Westcott Jennie 85 Orleans
C. D.    1870. Westcott Jennie, baker, 95 Orleans, E. B. h. 222 Everett, do.

I decline to make a similar finding as to Mr. Browne's instances 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 16, 21, 22, 23, and 24, preferring not to find copying

where there is not corroborative proof thereof from an inspection of defendant's directory, except in the single instance of "Westcott Jennie," as to which the evidence of complainant's witness Alexander Hutchins (typewritten page 68) is plenary.]

### Complainant's Requests for Rulings.

Upon the findings of fact made by the master, it is requested that he should find as conclusions of law, instead of the findings made by him, as follows:

First. From the fact that the defendant has copied the three trap names hereinbefore mentioned in the master's findings 12 and 13, and has copied numerous errors occurring throughout the complainant's directory, and has copied numerous names of persons occurring in the complainant's directory, but deceased or removed before the time of defendant's canvass, the complainant is entitled to an injunction against the defendant from using, selling, or offering for sale, or otherwise disposing of, or offering to dispose of, any copy of defendant's 1904 City Directory of Boston.

Note. This conclusion is based upon the assumption that whereas the defendant's witnesses have testified that, in every case where information was not obtained by original canvass, it was obtained by verification of matter copied from complainant's book, yet it appearing that in these isolated and widely separated instances such was not the fact, there is ground for finding that in no case was the matter copied from complainant's book verified, but that all matter so copied was printed as copied, without verification. If this be found, the matter so printed forming a large portion of the defendant's entire book, and not being readily distinguishable from the rest, the defendant, having wrongfully mixed the matter of another with his own, must suffer the consequences.

[Master's Note 45. I decline to report a conclusion of law in the form above suggested by Mr. Browne. I have found as facts substantially that the defendant copied into its directory from complainant's copyrighted directory the three trap names mentioned in master's findings 12 and 13, and has so copied the errors specified in master's findings 7, 8, 10, 11, 14, 15, and 15a, and the errors referred to in master's finding 9. I amend my first conclusion of law on page 12 by substituting for the words "Master's Finding 15," at the end of paragraph 4, the words "Master's Findings 15 and 15a," and, as thus amended, I confirm my said first conclusion of law.]

Second. If the complainant is not entitled to an injunction as aforesaid, then that it is entitled to an injunction against the defendant from using or selling, or offering for sale, or otherwise disposing of, or offering to dispose of, any copy of its 1904 City Directory of Boston, so long as it contains the matter set forth in paragraphs 1, 2, 3, and 4, on page 12 of the master's report.

[Master's Note 46. Yes; that was the intent of my first conclusion of law on page 12, and I assent that the words "or otherwise disposing of, or offering to dispose of," may be inserted in the second line of my said first conclusion of law, after the words "or offering for sale."]

Third. If the first conclusion of law above set forth is correct, the complainant is entitled to a decree for an accounting of profits derived by defendant from and by reason of its manufacture, use, sale, or delivery of its 1904 City Directory of Boston.

[Master's Note 47. Yes; but in master's note 45 I have declined to report a conclusion of law in the form set out in Mr. Browne's above paragraph first.]

Fourth. If the second conclusion of law above set forth is sustained, the complainant is entitled to a decree as set forth in the clause marked "Second" at the end of the master's present findings.

[Master's Note 48. Yes; the complainant is entitled to such a decree.]

Respectfully submitted,       Alex. P. Browne,
       Solicitor and of Counsel for Complainant.
Respectfully submitted,      John G. Stetson, Master.

September 30, 1904. The foregoing was submitted to counsel for both parties (Mr. Browne and Mr. Hunt) as a second draft report, to be retained in the master's office till Wednesday, October 5, 1904.

October 3, 1904. Mr. Hunt sent to me a letter from which I quote the following: "I think that, to protect fully the rights of my clients, I must ask you to report all the evidence in Sampson & Murdock Co. v. Seaver-Radford Co." Upon this request by Mr. Hunt in behalf of the defendant, I report all the evidence before me, as required by the order of reference of May 17, 1904, and I annex a schedule of this evidence to this report.

October 15, 1904. No further objections being taken by either party, and no further requests being made by either party, I make this my final report.

Respectfully submitted,                    John G. Stetson, Master.

To the above report the complainant filed the following exceptions:

(1) It excepts to the ruling of the master, in master's note 25, that a compiler of a general directory has the right to use a prior general directory both to verify the results of his own work, and to show him and direct him to the persons upon whom it may be worth his while to call.

(2) It excepts to the ruling of the master, in master's note 26, that "one who is compiling a general directory of a city has the right, after making his own canvass, to take a part of the names and addresses contained in another general directory, go to the original sources of information, ascertain how far the existing facts concur with the statements of the first directory, and then to print and publish the result as his own; abandoning what is not found, and changing what his investigation shows should be changed, and printing without change what he has, by means of his own investigation, found to be correct."

(3) It excepts to the ruling of the master, in master's note 27, that "the right to do as above stated is not lost by reason of the fact that a person, in going to the sources of information, takes with him memoranda of names and addresses copied from the first directory, changing them, when his investigation shows they should be changed, to correspond with the facts, and checking them as correct when they prove to be correct."

(4) It excepts to the failure of the master to find as a conclusion of law (see master's note 45) that from the fact that the defendant has copied the three trap names hereinbefore mentioned in the master's findings 12 and 13, and has copied numerous errors occurring throughout the complainant's directory, and has copied numerous names of persons occurring in the complainant's directory, but deceased or removed before the time of defendant's canvass, the complainant is entitled to an injunction against the defendant from using, selling, or offering for sale, or otherwise disposing of or offering to dispose of, any copy of defendant's 1904 City Directory of Boston.

The defendant also filed certain exceptions, but, upon hearing, argued only, first, an exception in reference to the right to drawing questions; and, second, an exception urging that the master ought to have made a finding that the plaintiff should affirmatively show damages before he is entitled to any injunction. Defendant's other exceptions were not pressed at the hearing, and need not be referred to.

Alex. P. Browne, for complainant.
Thomas Hunt, for defendant.

HALE, District Judge (after stating the case). This cause has already been before the court upon the question of preliminary injunction. 129 Fed. 761. After action had been taken on that question, the case came before us upon bill, answer and replication, and, under the practice of the court in such cases, was referred to John G. Stetson, as master, to hear the evidence, find the facts, and report to the court his findings of fact, his conclusions of law, and such portions of the evidence as either party might request, or as

he might deem useful for the court.    The master has fully heard
the parties, and has filed his report, which clearly presents the
whole matter for our consideration.    The leading and vital conten-
tion of the complainant is that the master made an error in ruling
that "one who is compiling a general directory of a city has the
right, after making his own canvass, to take a part of the names
and addresses contained in another general directory, go to the orig-
inal sources of information, ascertain how far the existing facts
concur with the statements of the first directory, and then to print
and publish the result as his own; abandoning what is not found,
and changing what his investigation shows should be changed, and
printing, without change, what he has, by means of his own inves-
tigation, found to be correct."    In our former decision we found it
necessary to refer to this subject, and to discuss it briefly.    We
stated the leading English authorities, and the cases presenting the
conclusions of the federal courts of this country.    We referred to
the late cases:    The Thompson Co. v. American Lawbook Com-
pany, 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607, and Dun v.
International Mercantile Agency (C. C.) 127 Fed. 173.    We then said:

> "It seems to us that there is strong reason for holding that the publisher
> of a new directory has a right to take an old directory, and be guided by it
> to original sources of information, and that if, so guided, he goes to those
> sources of information and obtains facts, he may publish those facts, even
> though they consist of names and addresses which are identical with those
> published by the old directory.  But upon this motion for a temporary injunc-
> tion it is not necessary nor fitting for the court to pass upon this question."

As the case now comes before the court, it is necessary to pass
upon the question.    We see no reason for coming to a different
conclusion from that suggested in our former opinion.    The Amer-
ican cases which we have just cited contain the latest expression
of the federal courts upon the subject, and must control our action.
The learned counsel for the complainant has presented a very able
argument, insisting that the court should not allow the compiler
of a directory to verify his own work by a former directory; that
he should not be permitted to go to the original sources pointed
out by the former directory, and, after verifying the statement of
the former directory, then to publish the names and addresses, if
they are identical with those published in a former directory.    But
the action which we indicated in our former opinion amounts to
something more than mere verification.    For example, let us sup-
pose that in July a publisher is obtaining information upon which
he proposes to publish a directory.    He takes an old directory which
had been compiled the preceding January.    In that directory it
appears that John Smith was in January a lawyer at No. 1 Tremont
street.    With the information contained in the January directory,
the compiler of the July directory goes to No. 1 Tremont street on
July 1st, and finds that John Smith is a lawyer; that he has at that
date an office at No. 1 Tremont street.    The directory maker has
a right to publish this information in his July directory.    He can-
not be precluded from so publishing it by the fact that the maker
of the January directory has stated that the same facts existed in

the preceding January. The maker of the January directory may or may not have stated the truth as to John Smith at that time; but the compiler of the July directory may, in his directory, state the facts as they exist on July 1st relating to John Smith, whether those same facts existed, or not, the previous January, and whether they were stated, or not, in the January directory. The compiler of the July directory is not merely verifying and quoting. He is obtaining facts from original sources, using the old directory only to guide him to these sources. Facts so obtained he may publish in his compilation. He cannot be prevented from such publication by the fact that the same things were true in January, and were stated by a former compiler.

In reference to the exceptions raised by the defendant, we have already considered the subject of the first exception. In reference to the second exception, we sustain the findings of the master.

We overrule the exceptions of both parties to the report of the master, and confirm his findings of fact and conclusions of law.

The learned counsel for complainant requests that the court decree a general injunction, with liberty for the defendant to have the injunction removed when he shall have expunged certain offending matter. He bases this request upon the decree in Social Register Association v. Murphy (C. C.) 128 Fed. 116; but in that case the court found that, as to portions of the book at issue, certain material of the complainant and defendant were so blended that a separation was impracticable, and on this ground made the injunction general. We prefer to order a specific injunction in accordance with the details indicated in the findings of the master.

A decree may therefore be entered that there be:

First. An injunction against the defendant from using or selling or offering for sale any copy of its 1904 City Directory of Boston so long as it contains—

(1) In its list of office buildings, halls, etc., on page 173, the name and location, "McKinley Hall, 24 W. Concord St.";

(2) In its general directory the names and information contained therewith set out in master's findings 7, 8, 9, 10, 11, and 14;

(3) In its general directory the names and the information referred to in master's findings as not front-checked in the check books, and so not obtained by original canvass, and not blue-dotted, and so not obtained from original sources upon questions drawn, but which are not included in Master's Schedule C; and

(4) In its business directory the fictitious names and locations, "Rogers Robert L., 312 Maverick," on page 1969, and "Jones G. W. 1650 Dorchester ave.," on page 2151, and the sixteen names and information in the form described in master's findings 15 and 15a.

Second. That there be an accounting to the complainant for profits derived by the defendant from and by reason of its incorporating in its 1904 City Directory of Boston the names and information specified above in paragraphs 1, 2, 3 and 4, and from the manufacture and sale of said directory, in so far as such profits are attributable to such incorporating therein of said names and information.