REED and another *v.* HOLLIDAY.

*(Circuit Court, W. D. Pennsylvania. January 31, 1884.)*

1. COPYRIGHT—ACT OF CONGRESS.
    The act of congress secures to the proprietor of a copyright the "sole liberty" of printing, etc., and vending the copyrighted book, and this is inconsistent with a right in any other person to print and vend material and valuable portions of said work taken *verbatim* therefrom.

2. SAME—INFRINGEMENT—TEXT-BOOKS—KEY FOR USE OF TEACHERS.
    A key, purporting to be for the use of teachers, to copyrighted text-books which contain an original method by which instruction in the English language is made interesting and effective by the use of sentences formed into diagrams under certain rules and principles of analysis, in which key are transcribed from the original works, diagrams, and also all the lesson-sentences arranged in diagrams according to said rules, is an infringement of the copyright.

3. SAME—INJUNCTION—WHAT MUST BE SHOWN.
    Upon an application for an injunction to restrain infringement, it is not necessary to show that the piratical work is a substitute for the original.

4. SAME—INTENTION.
    Intention is a matter of no moment if infringement otherwise appears.

5. SAME—INJUNCTION—WHEN GRANTED.
    If a plaintiff shows infringement of his copyright the court will grant an injunction without proof of actual damage.

In Equity.  *Sur* motion for preliminary *injunction.*
*W. F. McCook* for complainants.
*Wm. Blakely* for defendant.

ACHESON, J.  The plaintiffs are the proprietors of the copyright—secured to them according to the provisions of the act of congress—of two text-books, for the use of schools, of which they are the joint authors and compilers, entitled "Graded Lessons in English" and "Higher Lessons in English," which contain an original method by which instruction in the English language is made interesting and effective by the use of sentences formed into diagrams under certain rules and principles of analysis within the easy comprehension of pupils.  The general method employed is the arrangement of a single sentence in each lesson in the form of a diagram, and it is required of the pupils that a number of other sentences contained in each lesson shall be written out by them in the form of diagrams in accordance with the laws of the English language as laid down, explained, and amplified in said works.  It is shown that these text-books have been favorably received and extensively used by practical educators in different parts of the country, and that the sales thereof have been large and remunerative to the plaintiffs.  The defendant has published, exposed to sale, and sold, and continues so to do, a work called "A Teacher's Manual to accompany Reed & Kellogg's English Lessons, as prepared by Robert P. Holliday."  This work purports to be a key to the plaintiffs' text-books, for the use of teachers and private students.  It is a volume of 236 pages, (including preface, remarks, and index,) of which 188 pages consist of sentences formed into diagrams.  Forty of these diagrams, forming a distinguishing feature and characteristic of the plaintiffs' said works, are exact copies therefrom, and the remainder are made up by transcribing from the plaintiffs' works literally, and in the order in which they there. appear, the lesson-sentences composed or selected by the plaintiffs, and arranging these sentences in diagrams upon the principles and under the rules laid down by the plaintiffs in their above-named works.

The defendant shows that teaching grammar with the aid of diagrams did not originate with the plaintiffs, and that the system appears in works anterior to theirs; for example, in "Burtt's Practical English Grammar" and "Clark's Practical Grammar."  This is not controverted.  All that the plaintiffs claim is that the particular method set forth and explained in their works is original.  But the defendant has not contented himself with copying the plaintiff's diagrams merely.  He has appropriated bodily the lesson-sentences composed or compiled by them, and which constitute substantial parts of their works.  True, the defendant has not copied the whole, and perhaps not the larger portion, of either of the works of the plaintiffs.  He has, however, incorporated in his book material portions of each, and this constitutes infringement, (*Folsom* v. *Marsh,*

2 Story, 100; *Greene* v. *Bishop*, 1 Cliff. 186,) unless the defendant can justify himself upon some principle consistent with the entirety of ownership which the author has in his copyright. This the defendant attempts to do. He alleges that his book is not intended to supersede the plaintiffs' work, or to infringe their copyright; that it is a mere key to accompany the plaintiffs' text-books, and to be used in connection therewith; and that in fact it does not supersede them. Intention, however, is a matter of no moment if infringement otherwise appears. *Roworth* v. *Wilkes*, 1 Camp. 98; *McLean* v. *Fleming*, 96 U. S. 245. Nor is it necessary to show, upon an application for an injunction to restrain infringement, that the violation of the copyright is so extensive that the piratical work is a substitute for the original work. *Bohn* v. *Bogue*, 10 Jur. 420. The act of congress secures to the proprietor of the copyright the "sole liberty" of printing, etc., and vending the copyrighted book, and this certainly is inconsistent with a right in any other person to print and vend material and valuable proportions of such work taken *verbatim* therefrom. What difference, then, does it make that the defendant's work takes the form of a *key* to the plaintiffs' text-books? By what right may he thus appropriate the fruits of the plaintiffs' talents, labors, and industry? Granted that the defendant has produced a serviceable key to aid the instructor. This no more entitles him to take to himself, and publish the literary matter covered by the plaintiffs' copyright, than does the fact that a second inventor has made an improvement on a patented machine give him the right to use such machine during the life of the first patent.

The defendant, in opposition to the present motion, asserts, further, that the plaintiffs sustain no damages by reason of the sale of his work, but, on the contrary, are benefited thereby, as the key promotes the sale of the original works. The opinion of at least one witness coincides with this theory. But the plaintiffs entertain a very different view of the effect of the sale of the key, and they allege that it will prove highly detrimental to them in this, that the fact that a full key to all the work to be done by the pupils using these text-books is on public sale, and within reach of the pupils, will impair the popularity, usefulness, and sale of said works. I confess that this strikes me as a consequence very likely to follow the general sale of the defendant's book. But, at any rate, the defendant has no right to subject the plaintiffs to such risk. Moreover, if a plaintiff shows infringement of his copyright, the court will grant an injunction without proof of actual damage. *Tinsley* v. *Lacy*, 32 L. J. Ch. 536. The motion for a preliminary injunction must prevail.

Let a decree therefor be drawn.