SOCIAL REGISTER ASS'N v. MURPHY.

(Circuit Court, D. Rhode Island. January 28, 1904.)

No. 2,617

1. COPYRIGHT—INFRINGEMENT—LISTS OF SOCIETY PEOPLE.

Complainant publishes a series of copyrighted books entitled "Social Register," each of which covers a different city, and contains a local directory of certain persons selected with reference to social standing. The names are arranged in groups showing the members of households, and

the maiden names of married women are also given. It also publishes annually books entitled "Social Register, Summer," giving the summer addresses of persons in different cities, and some years previously it published a "Social Register, Newport." Defendant published a book purporting to contain the summer and winter addresses of cottagers at Newport and other summer resorts, in the preparation of which he made use to some extent of the books of complainant, but it did not appear that he used the selections of prominent persons made therein. *Held*, that whether or not such use constituted an infringement of copyright depended upon whether matter obtained by complainant from original sources of information, and which was the product of its labor and expenditure, was appropriated; that under such rule it is doubtful if the copying or verifying of a small number of winter addresses of persons or families from complainant's books would be an infringement, but that as to the special features, such as giving the members of households, or the maiden names of married women, complainant was protected by its copyrights, and was entitled to an injunction, it appearing that in some instances such matters had been appropriated by defendant.

2. TRADE-MARK—INFRINGEMENT—TITLE OF BOOK.

While the words "Social Register," adopted as the title of a series of books containing lists of persons selected by the compiler, may, in association, constitute a trade-mark, neither word alone can be so appropriated, and the fact that complainant published such a book under the title "Social Register, Newport," does not entitle it to enjoin the use by defendant of the title "Newport Social Index" for a similar publication, there being no proof that any deception was intended or resulted, such as to constitute unfair competition.

3. COPYRIGHT—SUIT FOR INFRINGEMENT—SCOPE OF INJUNCTION.

An injunction against an infringing publication will be extended to all portions in which infringing and noninfringing matter has been so blended that its separation is impracticable, but not to such distinct parts as do not infringe, and defendant may properly be given leave to apply for its modification when he shall have expunged all infringing matter.

In Equity. Suit for injunction to restrain infringement of copyright and unfair competition. On final hearing.

Gifford & Bull, for complainant.

Frank Healy, for defendant.

BROWN, District Judge. It is charged that the defendant's book "Newport Social Index, Summer 1902," is an infringement of copyrights owned by the complainant, and also that its sale constitutes unfair competition in trade.

The complainant publishes a series of copyrighted books, each of which has in its title the words "Social Register," accompanied by the name of the city and the year of publication; as, for example, "Social Register, New York, 1902," "Social Register, Washington, 1902," etc. A social register is published annually in each of eight cities—New York, Washington, Philadelphia, Chicago, Boston, Baltimore, Buffalo, and St. Louis. Each of these books is a special local directory containing "a list of names of certain persons selected with respect to their social standing." The names are arranged in groups showing the members of households, with the names of parents first, daughters next, and sons next, in the order of their ages; also the names of minors and relatives. While, in the general arrangement of

¶ 3. See Copyrights, vol. 11, Cent. Dig. § 80.

the book, an alphabetical order is used for the principal members of a household, the group also contains names of persons in the household, not given in alphabetical arrangement.. A special feature is the insertion of the given names and maiden patronymics of married women. In 1887 the complainant published a "Social Register, Newport, 1887," but since then has published no local work for that city. It has published annually, however, general books entitled "Social Register, Summer," containing the country or foreign addresses only of prominent families of New York, Washington, Philadelphia, Chicago, Boston, and Baltimore. It also publishes a book, "Social Register, Visiting Index," the scope of which it is unnecessary to describe. Each of these publications is copyrighted.

The defendant's book purports to contain "the summer and winter addresses of the cottagers of Newport, Jamestown, Middletown, and Portsmouth, Rhode Island; army and navy officers, Naval War College, U. S. Training Station, U. S. Torpedo Station, Fort Adams, Fort Greble, Fort Wetherell, and North Atlantic Squadron." The defendant admits, in general language, that information was obtained by his agents from some of the complainant's books. The exact manner of the use of the complainant's books by the defendant's agents is not in proof. The evidence is such, however, as to warrant the finding that in the preparation of the defendant's book there was a considerable amount of copying from the complainant's books. Items to the number of 15 or 16 are pointed out containing errors existing in complainant's books, and reproduced by the defendant. There is also evidence tending to show that the maiden names of married women appearing in the defendant's book were taken, to a considerable extent, from books of the complainant.

While it has been made to appear that material copyrighted by the complainant is used in the defendant's book, this case presents some peculiarities, and raises the question of fair use of a copyrighted publication. Whether this defendant is guilty of piracy of the Social Register, Washington, for example, admits of some argument. The complainant's book is a local directory of Washington, and gives a limited and selected list of residents of Washington. The principle of selection is social prominence in Washington. I fail to see that the defendant has necessarily availed himself of the judgment of the complainant's compiler as to whom should be selected as a person of prominence. Assuming that he has used this list to ascertain a limited number of winter addresses of summer residents of Newport whose homes are in Washington, it is doubtful if this use was unfair. This question is dealt with in Drone on Copyright, p. 413. There it is said:

"In determining whether the part taken is material in extent and importance, a variety of circumstances must be considered—the absolute amount and value of the part; its ratio to the whole from which it is taken, and to the whole in which it is afterward incorporated; its relative value to each of the works in controversy; the purpose which it serves in each; how far the later work may tend to supersede the original, or interfere with its sale; to what extent the original author may be injured, actually or potentially, by the unlicensed use made of his publication; and many special considerations, which need not here be mentioned."

In List Publishing Co. v. Keller (C. C.) 30 Fed. 772, Judge Wallace said of publications of this character:

"They are designed to provide a catalogue, in convenient form, of the names and addresses of a selected class of eligible persons. They are original to the extent that the selection is original. Their commercial value depends upon the judgment and knowledge of the author respecting the social standing and society relations of a limited class of the general public. * * * Either of the present parties could lawfully use a general city directory to obtain the correct addresses of the selected persons; nor is it doubted that the defendant has the right to use the complainant's book for the purpose of verifying the orthography of the names or the correctness of the addresses of the persons selected. But if the defendant has used the list to save himself the trouble of making an independent selection or classification of the persons whose names appear in the Social Register, although he may have done so only to a very limited extent, he has infringed the complainant's copyright."

While so extended a use of a general city directory would probably not be justified by the weight of authority, yet, if the defendant had first compiled a list of residents of Newport, Jamestown, and vicinity, it is not clear that he might not use the complainant's Washington list, for example, for the limited purpose of finding the winter addresses of a small number of persons. A like question arises in relation to the Boston and Baltimore Registers. It should be observed, however, that by recourse to the complainant's publications the defendant would receive information of a different character from that afforded by an ordinary directory with the ordinary alphabetical classification, for he would be informed as to the group of persons constituting a household, and also as to the maiden names of married women. This information was the product of the complainant's labor and expense, and the complainant is entitled to protection in its use.

While it might be truly said, as to several of these publications, that the defendant's book constituted no invasion of their general field or purpose, it also should be said that scattered throughout these various books is a large amount of information as to households and maiden names which is useful to the owners of the copyright, not only as a part of their local directories, but as a part of another copyrighted publication known as the "Social Register, Summer." This purports to give summer addresses, but it likewise gives the family group and the maiden names. A compiler, therefore, who had access to a complete series of the complainant's publications, would be able to construct from them, and without recourse to original sources of information, a very considerable portion of a Newport social book. It thus appears that the value to the complainant of the specific items of information contained in its local books is not wholly dependent upon the use in the local directories. The items are also valuable for use in a more general work, which, to a certain extent, is in the same field with the defendant's publication. Assuming that a publisher issues two directories, in one of which are given the winter addresses and in the other the summer addresses, it is not permissible, without his consent, to unite these in a single book in which both winter and summer addresses are given. Nor do I think it would be a fair use, under the circumstances of this case, to select from the summer register those groups of persons having residences in Newport. The question of fair use must depend to a considerable extent upon actual conditions and practical

business considerations. It is unnecessary to adopt for this case the strict rule that no use of directories of this class can be made in the compiling of other lists. It is enough that we look at the substantial character of the complainant's property rights, and inquire whether the defendant has derived a substantial benefit from the complainant's labors, and has, in any substantial respect, interfered with the complainant by using material which is the property of the complainant. In the defendant's book are given 545 groups. In the New York Social Register appear also 270 of substantially the same groups. According to the complainant's figures, the material of 385 of the 545 groups in the defendant's book appears in the complainant's publications. It is quite true that the defendant has done a very considerable amount of original work in the compiling and editing of his book, that its scope is quite different from that of the local registers, and that it probably could not be used to any great extent as a substitute for any one of these local registers; but, on the other hand, it is true that there is an interference between the summer register and the Newport Social Index, and that the defendant has been aided by the complainant's own publications in a competition with the complainant.

We will next consider the contention of the complainant that the defendant's publication is calculated to mislead the public into the belief that the defendant's book is published by the complainant, and to enable the defendant to sell his publication on the reputation and worth of the complainant's publications. Upon the whole, I am of the opinion that the complainant has not made out this branch of its case. The name adopted by the defendant, "Newport Social Index," is not, on its face, calculated to lead a person to believe that the book is any one of the local social registers, nor the "Social Register, Summer," nor the "Social Register, Visiting Index." While it has been held in Social Register Ass'n v. Howard (C. C.) 60 Fed. 270, that the words "Social Register" "are clearly selected arbitrarily to designate the publication of the complainant, and cannot be properly called descriptive in any sense," this was said of the whole title, and is not sufficient to authorize the complainant to prevent the use of the word "Social" alone. The court says:

"Hence the words, when chosen, associated together, and applied to the list of persons selected at will by the compiler, as in the case at bar, become a trade-mark, and are entitled to protection as such."

While the associated words, "Social Register" may become a trademark, yet the words "Newport Social Index" are not proven to have caused any actual mistake; and it is not apparent that there is any reasonable probability of their doing so. Previous publications have been called "Society List" and "Society Visiting List." The words "Society" and "Social" are not arbitrary signs. They are descriptive, and have a commonly understood meaning in the terms "society events," "social events," "society gossip," "social gossip," etc. It is legitimate to compile a blue book or society list for a city in which the complainant has no publication; and the word "Social" is one that persons might naturally employ in connection with other words in making up a title to a local book. While the use of the word "Social," like the use of a proper name, might, under particular circumstances, con-

stitute unfair competition, yet such circumstances have not been shown to exist in this case.   An inspection of the defendant's book, its size, shape, type, color of binding, etc., precludes the belief that a person familiar with the publications of the complainant would be led by the defendant's title, or by the general appearance of the book, to believe that it was one of the complainant's publications.   The feature of family groups in brackets can hardly be regarded as a deceptive similarity. The whole impression, on a comparison of the complainant's and defendant's publications, is rather of substantial difference than of substantial resemblance.

It appears that the defendant issued a prospectus in which his proposed work was entitled "Newport Social Register," and that he contemplated publishing a Newport book under this title.   After correspondence with the complainant, this title was abandoned, and the present title chosen; but this fact is not sufficient to convince me that the defendant's book was published with any intention to lead the public to believe that it was a publication of the complainant, or to trade on its reputation, or that it did have a deceptive tendency.   The defendant had previously issued publications giving lists of cottage owners in Newport, and, while he was doubtless influenced by the complainant's publications to adopt certain features of its books, and to use its material, it was for the purpose of facilitating his own work in making a book, rather than of profiting by the complainant's reputation.

The complainant is entitled to an injunction upon the ground of infringement of copyrights, but not on the ground of violation of trade-mark, or of unfair competition.   As to those portions of the book where material of the complainant and of the defendant is so blended that a separation is impractical, the injunction must be general.   Callaghan v. Myers, 128 U. S. 666, 9 Sup. Ct. 177, 32 L. Ed. 547.   The injunction should not extend, however, to those distinct parts of the book which are not affected by the complainant's copyrights.   Upon the proofs it is not satisfactorily established that in making up the list of yachts any substantial use was made of the complainant's publications.   In Kelly v. Morris, L. R. 1 Eq. 697, 703, the injunction was general, with liberty for the defendant to apply when he should have expunged all matter copied from the complainant's works.   Like liberty may be reserved to the defendant in this case.

Let a draft decree for an injunction be presented accordingly.