HARTFORD PRINTING CO. v. HARTFORD DIRECTORY & PRINT-
ING CO.

(Circuit Court, D. Connecticut. July 30, 1906.)

No. 1,193.

1. COPYRIGHT—INFRINGEMENT—PROFITS RECOVERABLE.

On an accounting by a defendant for profits realized from the sale of
a directory which infringed complainant's copyright, the amounts received
from advertisers are to be included in the gross receipts, to be accounted
for, less the necessary cost of producing and disposing of the copies sold.

2. SAME.

In computing the profits realized by an infringer of a copyright for
which he is accountable to the owner, where a greater number of copies
of the infringing publication were printed than were sold, he is entitled
to have deducted from the gross receipts all of such items of cost as
would have been the same, had no more copies been printed than were
sold, such as providing the copy and composition.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 81.]

In Equity. On accounting.

For former opinion, see 146 Fed. 332.

The following is the stipulation:

Whereas, the parties in the above-entitled action are able and ready to
agree upon all the material facts which would be proved before a master if
an accounting were taken in the above-entitled case; and whereas, the only
disagreement between the parties relates to the materiality of certain items
and to the rule for determining the profits, if any, to which the complainant
is entitled; and whereas the above matters of disagreement are purely mat-
ters of law, which would come before this court for decision after a finding
by a master, if an accounting were taken: Therefore, the parties respect-
fully request that this court will determine said matters of disagreement in
the first instance and without any prior reference to a master for an account-
ing, which reference is hereby waived by both parties; and, if this court will
agree and consent to take such jurisdiction, the parties hereto do hereby stipu-
late and agree that the facts, in so far as they are deemed material hereto by
the parties, or either of them, are as follows:

(1) There were 5,000 "dollar" directories printed for the defendant. Of
these, 4,548 copies were bound, and 452 copies were not bound. After the
modification of the restraining order granted in this case, 959 copies were
repaired at a cost of $14.25 in order to permit of further sales, 1,394 copies
were sold prior to the issuance of the restraining order, and 113 copies were
sold after the modification thereof.

(2) The gross receipts of the defendant were as follows:

(a) By payments for insertion of advertisements in the directories. .$2,779 80
(b) By mining stock received in part settlement for advertisements of
    Douglas, Lacey & Co., said mining stock being received by de-
    fendant at a valuation of 15 cents per share..................   45 00
(c) By sale of 1,394 directories before the issuance of the restraining
    order .................................................. 1,394 00
(d) By sale of 113 directories after the modification of said restrain-
    ing order ..............................................  112 53
                                                              ─────────
    Total ..............................................$4,331 33

And in further explanation of said items of gross receipts it is stipulated
and agreed that the first item (a) for the insertion of advertisements repre-
sents, in the case of several of the advertisements included, a compromise pay-
ment, an allowance having been made from the contract price by reason of the

decreased number of directories sold over those which the defendant had expected to sell, and, further, that in the case of several advertisements no' payment whatever was made by the advertiser. The item as stated above represents, therefore, the actual receipts from advertisers, but without any deduction for commissions paid defendant's solicitors or collectors. The mining stock mentioned in the second item (b) was received by reason of such a compromise agreement. It was accepted by defendant only because a cash settlement could not be obtained, and is of no value.

(3) It is also stipulated and agreed that a conservative estimate of the present value of the lead slugs from which the defendant's directory was printed, and which have not as yet been sold, is $350.

(4) The gross disbursements of the defendant, to which it claims to be entitled to be credited, were as follows:

(a) To expenses of compiling, as follows:
To payroll for canvassers, verifiers, office help, etc...$2,186 55
To Robert C. Lawson for soliciting advertisements and
services on business directory......................  219 83
————————$2,406 33

(b) To expenses of publishing, as follows:
To Martin Slattery for linotype work done by himself
and his assistants .............................$1,315 32
To National Lead Company for metal for type........  450 45
To A. Pindar & Co. for cuts for advertisements......   43 07
To Dodd Lithographic Company for maps...........   65 00
To Plimpton Manufacturing Company for furnishing
necessary stock, setting advertisements, and press-
work on 5,000 copies, and for binding 4,548 copies
(an allowance of 7 cents per copy for the 452 copies
not bound, or $31.64, being made from the original
contract price for 5,000 copies)................... 2,449 61
————— 4,323 45

(c) To cost of repairing 959 copies after modification of re-
straining order (Plimpton Manufacturing Company)...........   14 25

(d) To expenses of sale, as follows:
To Guilfoil & Dolan for advertising.................$   10 00
To General Advertising Company for advertising......   18 50
To Hartford Times for advertising..................   52 75
To Smith & McDonough for commissions on direct-
ories sold .......................................   15 20
————— 96 45

(e) To miscellaneous items of expense connected with the
publication and sale of the directories, as follows:
To Case, Lockwood & Brainard Company for bill
heads and blank sheets...........................$   11 90
To Peck & Co. for advance printing..............   30 25
To expense of obtaining copyright..................    8 18
To J. W. Rockwell for boxes to preserve the type metal
after setting the same..........................   58 40
To other small miscellaneous items................  252 62
————— 361 35

(f) To other miscellaneous items, as follows:
To C. C. Fuller for office desk......................$   48 50
To Merganthaler Linotype Company for matrices....   77 50
————— 121 00

Total .......................................  $7,322 88

The defendant also claims the sum of $25 a week for four months, being salary agreed to be paid Mr. Slattery as officer of the defendant, which was not in fact paid, but is due from the defendant. This salary is claimed in addition to payments actually made to Mr. Slattery for linotype work done by him. Also the sum of $140 due Mr. Goldman as salary for seven months; his whole salary being $25 per week and only $20 per week having been

paid, which $20 per week is included in item (a) above. Also $8 due Mr. Slattery for office rent. It is further stipulated and agreed that the above items of disbursement and claims include all outstanding debts material to this action, as well as all disbursements actually made.

(5) It is further stipulated and agreed that the court may draw all proper and reasonable inferences of fact from the above statement of account in the same manner as a master might do if the above evidence were before him on an accounting.          The Hartford Printing Company.

By Ralph O. Wells, Its Attorney.

The Hartford Directory & Publishing Co.,
By Charles E. Perkins, Augustine Lonergan, Its Attorneys.

In compliance with the above request Platt, District Judge, appointed the 1st day of October, 1906, at 11 a. m., at the courtroom in Hartford, Conn., as a time and place for final hearing in the above matter.

Ralph O. Wells, for plaintiff.

A. Lonergan and C. E. Perkins, for defendant.

PLATT, District Judge. By their stipulation filed July 30, 1906, which accompanies this memorandum, the parties have agreed upon the essential facts which might have been found and reported by a master, and it becomes the duty of the court to order the issuance of a final decree based upon such facts. The stipulation has been carefully studied, for the purpose of finding what receipts are properly chargeable to the account of the infringement, and what was the actual reasonably necessary cost of producing and disposing of the infringing copies. If the gross receipts exceed such cost, the difference is the amount which the defendant ought to pay. To that extent it would have profited by its wrongdoing. In looking for the gross receipts we must include the amounts received from advertisers. The stipulated facts put them there; but, beyond that, they belong there on principle. It is true that the advertisements do not, per se, infringe upon the plaintiff's rights; but they were procured for and placed in a directory which is tainted with bad faith from A to Z. The defendant cannot, on any theory of honest dealing known to the court, retain the moneys received therefor. We therefore start with "Gross receipts, $4,331.33."

Taking up the problem of actual cost of the directories from the viewpoint of a reasonable man, we find that 5,000 directories were printed and 1,507 of them were sold. The plaintiff insists that the way to get at the cost is to find what it actually cost, looked at fairly, to produce the entire 5,000 copies, and that the cost of the infringing volumes will be found by the simple mathematical process of dividing the total cost by the fraction $^{1507}/_{5000}$. The trouble with that is this: A certain portion of the expenditures for labor and materials is a fixed charge, which could not materially vary, whether the number of directories produced was 5,000 or 1,000. In other words, in many respects it would have cost about as much to produce 1,507 copies as it did to get out the whole 5,000.

Taking up specific items found in the stipulation:

Paragraph 4, subdivision (a):

To expenses of compiling, as follows:

To pay-roll for canvassers, verifiers. office help, etc..........$2,186 55
To Robert C. Lawson for soliciting advertisements and serv-
ices on business directory................................ 219 83

$2,406 38

Subdivision (b):

To expenses of publishing, as follows:

To Martin Slattery for linotype work done by himself and
his assistants.........................................$1,315 32
To National Lead Company for metal for type............... 450 45
To A. Pindar & Co. for cuts for advertisements............. 43 07
To Dodd Lithographic Company for maps.................... 65 00

$1,873 84

Here is a total expenditure of $4,280.32, which must have been incurred, no matter what number of copies were to be finally put upon the market. In this line of reasoning, of course, the principle of "de mininis" must be recognized.

The contract with the Plimpton Manufacturing Company provided that they should furnish the stock and perform the work necessary to produce 5,000 bound copies for $2,500, and so, after the preliminary general expense, it cost the defendant an additional 50 cents for each bound copy ready for delivery. Defendant sold 1,507 copies, and is entitled to credit on account of them of $753.50. Adding this amount to the $4,280.32 already found, we have a total of $5,033.82, which is considered the actual reasonably necessary expense incurred by the defendant in the production ready for delivery of the 1,507 infringing copies.

This rough glance at the situation, drawn in free hand, shows that the actual reasonably necessary cost was considerably greater than the gross receipts, and the court is, for that reason, relieved from the necessity of intruding upon the labyrinth which threatens to open up if the other items of claimed expense are analyzed. Since no profit resulted from the infringement, the damages must be fixed at the nominal amount of 6 cents.

If counsel for defendant wish to be heard on the question of costs, the court will hold the matter in abeyance for a reasonable time before ordering the entry of a final decree in accordance with this opinion.